All right. Our first case this morning is number 25-1041, Karen Brookins against the City of Philadelphia. Mr. Davey. My name is Jim Davey. I represent Karen Brookins. I'd like to reserve three minutes for a follow-up, please. Granted. Your Honor, may it please the court. 20 years before Officer Culver took a personal photograph of a suicide victim in an attempt at humor, the Supreme Court wrote that surviving family members have a right to personal privacy in their relatives' death scene images. It grounded its discussion of that right in longstanding traditions and the common law. So the district court erred by giving Officer Culver qualified immunity anyway. Whether this court looks to Favish, Wilson, analogous cases of this court, a uniform consensus of persuasive authority informed by Philadelphia Police Department policy, or simply declines to let Officer Culver have one liability-free violation, qualified immunity should be unavailable here. There are several bases on which this court could reverse, and I'll start with Favish unless you prefer that I start elsewhere. Supreme Court authority clearly establishes surviving family members' right to control their relatives' death scene images. As the Supreme Court has explained in cases like Washington v. Glucksberg, common law rights that are deeply rooted in history and tradition rise to the level of constitutional rights. Cases like Bruin and others have underscored that history and tradition always matter. And Favish says this right is just that. It located surviving family members' right to control death scene images in longstanding traditions and the common law, which, if anything, matters even more in the privacy context. There's a body of case law going back more than a century, including circuit cases, state high court cases. Favish itself cited a New York case from the 1800s. And it cites traditions from time immemorial about burial rights and surviving family members' interest in protecting their own memories of their loved ones. Does it matter that Favish was in the context of a FOIA request? It matters in the sense that it was discussing a statutory right there. But what matters is the way that Favish discussed the right. Does it matter that in Favish the court specifically said something like the statutory right at issue is broader than the constitutional right? Again, it would matter. And I certainly would not stand here before you and say that any right under FOIA rises to the level of a constitutional right or that any statutory right rose to the level of constitutional right. It was because of how they discussed it, again, grounding it in the common law, grounding it in a longstanding tradition and history and citing cases, again, predating, you know, going back into the 1800s and to the early founding of the Republic. Then let me take a step back and just ask about the facts. As I remember Favish, although the death in that context I believe happened at like a park or something like that, there are no allegations that anyone else around that it was public, anything like that. And I believe in most of the cases that you've cited to us, you know, there were facts such as, you know, photographs taken in an ME's office or in a home where a child was found. Things like that. Does the fact of where this took place and how it happened change things? That is, it was on a public bridge and there were bystanders near. Does that matter? How does that factor into our analysis? I have two answers for you, Your Honor. One of them is a fact answer and one of them is a lie answer. The fact answer is that I actually think the district court did a really good job on that, explaining that only Officer Culver, that's at minimum a fact dispute, only Officer Culver could have taken the picture. You know, at J420, one of the people that texted to my client specifically said, only an officer could have taken this picture. Officer Culver was only even there because he was doing crowd control and securing the scene. So at minimum, it's a fact dispute. I accept that. I'll take that. That, you know, for purposes of the stage that we're at, I accept that the photograph came from the officer. My question to you is that, does it matter that it was in public? Yeah. And I guess my law answer is that there's at least some cases, including Katsouras and Sellers. Katsouras involved the California Highway Patrol. Sellers involved another car, a car accident that happened in public. The mere fact that it happened in public is not dispositive. What matters is the privacy expectations and what a reasonable officer would know not to do. That's always the touchstone of qualified immunity. I'm having trouble with that, though, because public is the opposite of private.  I mean, I guess. Think of unrelated matters. Attorney-client privilege, right? We hold that sacrosanct, right? Well, when an attorney discloses it, it's gone. Isn't that sort of similar that here you've got a very public event? I mean, this was a public. It's a tragedy, but it was a public spectacle for a number of hours, was it not? I mean, he was on the top of the bridge for three hours. I think that, again, as a matter of fact, and I would really commend the district court's analysis in this regard. The officer was the only person that could have taken the particular picture that he took. Many other people could have taken myriad other pictures from other vantage points. I mean, is it your argument that this particular place where the officer was standing is something special about that? That if a member of the public two steps over from the officer had taken a picture from a slightly different vantage point, that that's a different case? I think I guess what I would say to this is that the officers there's there's facts in the record that suggest that the police department set up a perimeter. Certainly, you know, if it happens in public, as opposed to like in a medical examiner's office, you know, there's people that could take a shot from further away or something. But I think, again, when the entire purpose of Officer Culver being there was to help set up this perimeter and maintain us like a perimeter that people couldn't be inside of. There's a reasonable expectation that what happens inside of it, the police are controlling. And so I know now citizens have a personal privacy right in the perimeter set up by police officers. No, Your Honor. And I guess I should be more clear about that. The the picture that he took only he could have could have taken. And they're right. And I guess I guess I'm asking why that makes a difference. People walking on the ground could have taken pictures, you know, multitude of people have cameras out everywhere. People could have taken a multitude of pictures of this tragedy. Right. Well, I think that's a fact question, Your Honor. And I think that's, again, disputed. When you say people could have walked by and taken a picture of themselves, I think the answer is that we don't know that. And at minimum, it's disputed if they set up a plot. Obvious. No, I think I think it's just not obvious that a public area is susceptible to public photographing. Again, I think if you look at J420, one of the people that texted my client, the photo said only an officer could have taken this picture. We accept that that we accept for purposes of this, that the officer took the picture for purposes of where we are. You can't rule. You cannot say anything different. We have to accept that. And we do. We accept that. The question, though, is, as I understand the scene, there are members of the public on there is a bridge. There are two side streets. They're members of public on both of them. And you have a view of what's going on on both of those. That's what I understand to be the facts. I don't think those are disputed. The question that we're trying to get at is, as we understand this, you have a right to an expectation of privacy related to death scene photos. We're trying to figure out how these are private. Again, I think it's a big the right is to the extent that the right is about the images. The right is the expectation that you have is that an image like this will not be taken and exploited and shared outside of your the surviving family members control. And so in this case, where no one else, as far as we can tell, took any images like this, only Officer Culver did only Officer Culver and Officer Culver initially started texting it to people. I think only the the right is associated with the images. I just don't think I just don't think it matters. And again, I would point you and you you prevailed on that issue in the district court. Yes, Your Honor. So so the harder the harder issue for you is we've been talking about the part of the case that you won below, not the part of the case that you lost below. So I want to turn to that. Sure. Qualified immunity is tough because the Supreme Court has repeatedly chastised lower courts for defining the right at issue at too high a level of generality. Why aren't you doing that here? And how did the district court get it wrong on that score? Well, again, I think I'm I think it's an appropriate level of generality because I'm taking exactly the language that the Supreme Court used from Babish. And so I think I think the right is at an appropriate level of generality. But that that appropriate level of generality problem always relates to facts. The move that has been overturned by the Supreme Court many times, the move that courts, circuit courts have made that's been have been overturned involves stating a legal precept. For example, no unreasonable searches and seizures must give due process of law. In the Taylor v. Barkis case, you familiar with that one? Yes, sir. Out of this court, our court was reversed per curiam unanimously without argument because this court focused on the fact that prisons have an obligation to make sure that people don't commit suicide in prisons. Right. I think that those cases you have my point is you have to map the legal statement that's found in Babish to the facts of this case to show that this officer was on notice that what he was doing was illegal. Yeah. Again, I guess what I would say is in those cases, if you're taking the highest level definition of the of the constitutional right at issue here, the highest level is just a substantive due process. Right. In personal privacy, we've gone substantially. The next level is death images. You've got you've got that in Favish, right? I mean, Favish, it was it was a death image, but death image in what context? Right. I mean, a coroner, if it's a private suicide and nobody sees the body and it goes to the coroner and the coroner, someone in the coroner's office does a terrible thing and takes photos and distributes it. Isn't that a different case in this case consistent with Judge Montgomery Reed's question? I think the answer is no, your honor. And I guess I have I'll come back to what you said about the touchstone being what a reasonable officer would expect. And here, I think it's very powerful that every other officer that testified here. I've never I've been doing this for more than a decade. I've never seen this before. Every other officer who testified said, of course, we knew that we couldn't do that. One officer said that he was shocked. But again, that's the fact that it was repugnant behavior is is obvious. Right. But the fact that it's repugnant doesn't mean it violates clearly established law as articulated by the Supreme Court or a consensus of certain courts. Certainly. I mean, I guess, again, I have a few a few answers to that. Right. One of them is that I think the right in Favish is at a fine level of particularity for this. And I understand your point about the Supreme Court. But if you look at Taylor and other recent decisions, they also say that in really egregious circumstances, they accept a less particular level. Well, you don't need any level if it's obvious. Certainly. But is that your argument here is your argument here? We don't really have a Supreme Court case on point that would satisfy the strict test. But we have here is behavior that any person would obviously know violates constitutional right. We've made both arguments, Your Honor, and I'm happy to go with whichever one you prefer. I think that there's I think that there's certainly a Supreme Court authority. I think Favish is that I think that there's authority from this circuit that's reasonably on point. There's a robust consensus, a uniform consensus that source itself. There's a concurrence that says that there's scant contrary authority for the opposite proposition. Let me ask you a question. We had a recent case called a tour or a tour. Are you familiar with that case? I'm not, but I'm happy to have you tell me about it. Came out just a couple of weeks ago, maybe a little bit more than that. But it specifically said when we're considering this robust authority, we should look at circuit court cases. One of the circuit court cases that you think provide the robust authority other than the Marsh case? Well, there's Marsh. There's you know, Cheshire was affirmed in the Sixth Circuit, which in Cheshire, the district court analysis is obviously very on point. The there are three different circuits, the 11th, the 10th and the DC circuit that are that talk about it in the FOIA context where they talk about the right very robustly. And, you know, I can I can tell you also that Clark, which is an opinion of this court from a couple of years ago, specifically says, yes, you consider the circuit opinions, but you also consider district court authority, other high court authority. And then you have Cheshire, you have Melton, you have Roberts at the state level. You have Katsouris, you have Sellers, you have Lawson, you have Reed. And so if you look at every case to have considered analogous circumstances. So, again, I think to Judge Hardiman's question, I think you can get there. I think you get there with Favish. If you don't agree with me, I think you can get there with a robust consensus. And if you don't agree with me about that, I think you can get there through an obviousness analysis. You know, Judge Hardiman, I know you had said, you know, do you want to go in that direction? I'm happy for you to go in whichever direction you want. I think this is obviously wrong. I think the fact that all these other officers, I think the fact that the city, the city brief at nine, I think called it obviously improper. I think that I think that this is a case where you could go in that direction if you wanted to. I don't think you need to. I have trouble equating improper with a constitutional violation. It's improper to lie. It's improper to cheat. It's improper to steal. So none of those are constitutional violations. Yeah. And I understand that, Your Honor. But I think, again, I don't think you need to get to obviousness. But I think that if at bottom, if you don't agree on any of the case law, I think you can you can get there. I see that I'm in the red. But if you would like to ask any questions about the intentional infliction of emotional distress, I know we haven't talked about that. Well, let me let me check with Judge Roth and see if she has any questions. I have no further questions. OK, we'll hear you on rebuttal. Thank you. Thank you. Mr. Brownlee. Thank you, Your Honor. May it please the court. Joshua Brownlee on behalf of the police officer, Christopher Colbert. At the outset, we're willing to make two concessions. There is no genuine dispute that Officer Colbert took this photograph and there's no dispute that what he did was repugnant. But conscious, shocking behavior untethered to a liberty interest clearly established under governing precedent is not a constitutional violation. So, Judge Hardiman, you began with the definition of the right. I'm happy to proceed either with respect to the definition of the right of the clearly established inquiry. I'm happy to answer any questions that the court has. But with respect, I'd like you to get into that because I do. You concede that the district court got it right in saying that there is a privacy right here on these facts. We do not. And tell us what tell us why you disagree with that. We did we we proffered to the district court a definition of the right that directly implicated the legal precepts of the privacy interest. I believe the definition was something along the lines of death scene photo taken in a public sphere during a protracted interaction. And the district court said that sounds a little too granular. It had to be a protracted. No, no, it doesn't have to be protracted. No, it does not have to be. OK, so let's get rid of that. So if we're seeing photo in a public place, is that a more fair description? I don't think that that the contours of that right are sufficiently specific to encompass the facts of this case. One, because we don't know where the death, how to define a death scene. If we're to take the illustration from Marsh, that was a photograph taken in a rather intimate area in a medical examiner's office post autopsy. And this gets back to Judge Montgomery Reeves question about does context matter? And certainly context matters when we're trying to establish whether or not there's a reasonable expectation of privacy. My friend cited Wilson versus Lane in the briefs. The privacy issue at right in that case dealt with the home, the most sacrosanct area under constitutional law. This court's decision in Doe dealt with privacy in a decontamination area where the plaintiff in that case undertook deliberate efforts to shower in private. She closed the door. She told the recording police officers to leave. She exercised some control over that area in the confines of a closed space. And this court found expressly that she had a reasonable expectation of privacy, not in the resulting photographs, but in the decontamination area such that that was the constitutional violation. But context certainly matters. So public area. Yes. But when we're looking to whether or not the legal precept is sufficiently contoured in order to provide the requisite notice, we can take examples from some of the obvious cases from the Supreme Court's jurisprudence in this court's own cases. For example, hope versus Peltzer. The court didn't apply this general prohibition against cruel and unusual punishment. The court applied a prohibition against cruel and unusual punishment in the form of unnecessary in one infliction of physical pain in Taylor versus Rojas. It wasn't cruel and unusual punishment. It was cruel and unusual punishment in the form of dangerous and threatening confinement conditions. And Judge Roth writing for the court in Thomas versus city of Harrisburg. It wasn't a pretrial detainees general right to medical care. It was the right to medical care under circumstances where the need for a doctor's assistance would have been obvious. So yes, hitching a gentleman to a post in the middle of a field in the blazing sun with no bathroom or food for seven hours is cruel and unusual punishment confining a person in a feces covered cell, and then transferring him to another swimming in sewage is cruel and unusual punishment and being deliberately indifferent to a pretrial detainees knowing ingestion of cocaine. Yes, is a violation of the 14th amendment right to medical care, but those legal precepts are sufficiently contoured to provide notice under the circumstances that what the officers did in those cases violated the law. We don't have that here the district court imported the general analysis from Marsh, but, and this brings us to the first prom, obviously of the 1980 of the federal right inquiry on the 1983 claims the definition of the right, because we're working in this amorphous substantive context, this court held in doubt that privacy rights cannot be stated as bright line rules because they are necessarily context and facts specific, because what is reasonable in one place may not be reasonable in another. And that's why Wilson involved the home and in that case the court said no constitute affirmed the grant of qualified immunity and said no obvious violation. Yes, the Fourth Amendment provides the right against warrantless searches and seizures, but police in that case would not have known that executing a warrant with a media ride along would have violated the privacy of the home. So when we're getting to making sure that there's sufficient notice we can't invoke the legal precept and what less we've accurately defined the right at issue. And it is not sufficiently specific to say a privacy right and death scene images devoid of any contextual information, just with respect to Wilson, so what what context needs to be added here. So the context here one is that it most certainly was a public space. Right. The other can you say that that's that is a winner for you right there, that it's a public space on this right takes it out of the privacy right, the fact that it was public. I think that there. I'm not willing to say that in every single public space, there is not a reasonable expectation of privacy what I'm saying is on this record I know I'm back to my question to your friend isn't public the opposite of private. I noticed you to use two different words public and public space. Are you talking about like for example a park is a public space but if no one is at the park, it is not the same as if there was a concert happening at the time, or the structure of the park is the same and someone photograph peeping Tom photographs them. That's a clear invasion of privacy right. Well, someone wants to, you know, sunbathe nude in the park, just because there's no one in the park at that moment. Really, they're entitled to privacy their judge parties they can't be anticipated that someone might show up. Just to be clear, we think public is dispositive on this record. But I don't think the court needs to reach the broader question about whether or not every single public space is devoid of any reasonable expectation of privacy and court doesn't need to answer that question on this record. It's just under these circumstances did the law clearly established that what this officer did was objectively unreasonable. Mr Boone suffered tragically on that bridge he was up there for three hours nobody disputes that he was obviously mad at the district court painstakingly described the videos that we've submitted to the court. And despite the efforts of police officers to try to convince him to come down he ultimately succumb to his mental distress at that time, nobody disputes the tragic nature of those events, and nobody, believe me, is defending the morality of what officer Culver did, but that's not the question here. The question here is whether or not 14th Amendment substantive due process privacy law clearly established that taking the photo under these circumstances would be a violation. So, I'm sorry, can you restate your question. Yeah, I'm asking about the obvious Taylor V Rojas the obvious this line of cases, right, I mean there's a lot of cases that say that you don't need clearly established law if it is obvious. I push back on that proposition just slightly run because the obvious this exception is not a workaround to the to the clearly established inquiry it's merely another path to the same destination. So if we don't have a robust consensus of cases of persuasive authority there, and we can see there are situations in which a general rule of constitutional law may be sufficiently specific to give notice that conduct is unlawful notwithstanding the fact that no other court has analyzed the specific facts of that case we can see that that's the law. Nobody's pushing back on that. The issue here is that we don't get to obviousness, unless the legal precept that the plaintiff invokes covers the circumstances of this case, and that has to do with the definitional issue. Well, that's that's the part you lost on below, but exactly. Well, I'm, I'm assuming that you lose on that again. And I'm assuming that you are persuasive on the Supreme Court authority robust consensus. But what about obviousness. So with respect to obvious is the right at issue here, death scene images, a child's death scene images. One of the things that we have to do in this particular context is disaggregate how the court is going to treat the fact that it was a child, because there are certain parental interest. Yeah, is it does it matter that it wasn't a minor, it does under McCurdy versus dot it most certainly matters that Mr. Boone was an adult rather than a child because there is less of an expectation that you have constitutional authority to control the upbringing of an adult. There's a clear line in that line of decisions between minors and people who reach the age of majority, but with respect to marshes analysis on the privacy interest. The right at issue was defined by the circumstances of this case and we argued, I mean we had no oral argument on summary judgment but in the papers. We were very forceful with a district court and saying in the substantive due process context under Glucksburg, the court has to carefully describe the right at issue and the careful description limitation under Glucksburg is meant as a limiting principle because the court is reluctant to expand the scope of substantive due process. I understand that. But I want to make sure I hear an answer to judge Hardiman's question, with respect to obviousness, yes because what I hear him saying is, assume you lose I totally get your arguments on the first issue, but assume we agree with the district court on the first issue do you lose on obvious We do not lose on obvious and the reason we don't lose on obvious is because what Miss Brookings is asking the court to do is to make a leap. She's asking the court to take discussion of common law and historical traditions concerning burial rights in the FOIA context, and to directly impute them into the substantive due process context and what the effect of that is, is that the court is going to expect every state official to know that if the court discusses common law traditions in any case at any time, even if it's outside the constitutional context, there is now a well recognized substantive due process right such that you can be liable for obvious violations that cannot be the law. If the, if state actors are going to be expected to know the limits of their state authority under the supremacy clause in the United States Constitution, they must know that the law that they're violating is federally conferred and how it is conferred if it's a constitutional constitutional right, it has to be expressly adopted under a Glucksberg analysis, just to say that, while the court is undertaking a review of common law traditions in engaging in statutory construction that doesn't automatically import into the substantive due process context because at the end of the day, qualified immunity turns on objective legal reasonableness was the constitutional rule at issue sufficiently defined so that the officer had noticed that they would be violating. Does that argument you just made. Would you not, would you not say that it had been when you consider that it is the effect upon the surviving family members that you're talking about their right to be free from from picture that of the deceased and it doesn't matter how the deceased died or what statutory regime you're looking at and considering the death of the deceased. What you are looking at is the effect upon the surviving family members and and you have that, whether it's a boy or a case like this or any type of case, when it is the death of a, or the dead images of a close relative. If I understand the court's question that seems to be reverse engineering the remedy to the right by saying the family is aggrieved therefore we must treat it as conscious shocking and violation of substantive due process that's not how the analysis works. The law must clearly be clearly established prior to commission of the act. Nobody. Again, and I can't emphasize this enough given the nature of this case disputes that taking of this photograph was a point, and that any reasonable person would have been aggrieved by it. But the question here is whether or not the Constitution 14th Amendment substantive due process provides a privacy right in the context of this case, the district court defined the right incorrectly. And there is no robust consensus of cases analyzing the right that Miss Perkins asserts here, and under the obvious exception that the legal precept that she invokes does not encompass the circumstances of this case. All right, if we agree with what you just said, though, you just, to some extent, perhaps it made the case for a common law tort. So why don't you address that issue, we have never taken the position that Miss Perkins is not without remedy. But what she seeks to do is to recover on the United States Constitution. That's the issue here. I attorney client privilege I don't know if her attorneys ever informed her of her ability to pursue common law remedies because again this court held the Nunez that common law and statutory regimes provide privacy rights that are much more expansive than the United States Constitution. We were on summary judgment on a fourth amended complaint. Do you want to emphasize that a fourth amended complaint, and she had gone through to if not three sets of attorneys. Now there's the issue with the IED claim, but this common law issue also permeates litigation on the constitutional claim, because I in my opinion and I'm comfortable saying this a reasonable attorney would have asserted a pendant claim for violation of privacy under Pennsylvania law. So that would be my response to that question your honor but as it relates to the issues before this court, the IED claim. That's just a technical, they have a technical problem their failure to cite medical evidence. When counsel, and they filed those records in. I forget, forgive me, it was either opposition reply, but they were delivered to my office. The binder was twice the size of my files for today's hearing this thick, it was just a document dump. It was just a document dump three volumes, each over 500 pages rule 56 says the district court may look to other portions of the record not that the district court must look to other portions of the record, it cannot be an abuse of discretion to enforce procedural rules first year lawsuits and the court should affirm. There is no federally conferred right to privacy under the circumstances of this case. None was clearly established even if one did. And the court should affirm. All right, thank you very much, Mr Bradley will hear rebuttal from Mr Davey. Thank you, Your Honor. I'll make three quick points. The first is that I think my colleagues concession that every single public space is not. There's not a bright line that the facts matter. I think that dooms them here, because, again, under the facts here. It's at minimum disputed that the police that established a perimeter, only the officer could have taken the photo. And so if they're not advocating a rule that there's a bright line between public and private. I think that dooms them as a matter of fact control summary judgment. The second point is, you know, I think that they would read the obviousness doctrine out of existence entirely by demanding on point on point factually analogous precedent in order to invoke it. The point of the obviousness doctrine is that precedent doesn't matter. You're right. The point of the obvious doctrine, it's, it's an exception, or an off ramp from this onerous requirement that there has to be on point case law. Yes, yes. Okay. But doesn't it also stand to reason that the obviousness doctrine should be reserved for cases that are really outliers. I mean I think this is an outlier your honor I don't think I've never seen anything like this I'm sure you haven't either. And I would hope that I never see it again. And so I if you believe that it's reserved for outliers I think this is that kind of case. And tell us now about the adult. What's the limiting principle here. Could the deceased's sister have brought a case, the deceased's grandmother. I believe, yes, your honor I think that the child adult cousin. I believe that the child adult distinction probably goes to the scope of damages. I don't think it matters legally for the purpose of surviving family members trying to find out what the limiting principle is for an adult cousin. I mean, I don't think any image like this is going to incredibly upset cause tremendous emotional harm to any person that had feelings for the deceased, certainly, again, where is it only is it only the mother's prerogative is it just the parents prerogative, who, where, what is the scope of this privacy right in in a case like this where where it's a mother I don't think you need to reach that far. I don't think you need to address that in this case. I think at minimum, a mother would have that right and I think that's, I think that's fine. The last thing I would say, I do want to talk about the intentional infliction of emotional distress time very briefly. This court, of course district courts can enforce procedural rules, but precedent does not contemplate what is essentially a dispositive sanction, and I would point to a couple of sub points one of them is that, especially where the court could have declined jurisdiction over the state law claim. After resolving the federal claim, and didn't need to resolve it on the basis of grand summary judgment on it. And if you look at document 128 and the district court prior to the oral argument the district court gave no notice that it was intending to dismiss it on this basis in document 128 in the district court. He specifically the district court judge gave notice. I would like pin sites on these two other factual issues. There was no notice given that that there was this this pin site problem. And I think that makes it especially challenging to then grant judgment on that basis, no one including my colleague disputes that the evidence is in the record. You know, my colleague said Russell, which is an NPO but there the information was not in the record at all. No one disputes that the evidence of her emotional distress, specifically linked to the officer taking and sharing the picture is in the record, and whether it has exactly the damages that you'd expect. I think it's, I think it's, I think you should reverse on that claim to. I know we haven't talked about that if you have any questions I'm happy to take them but otherwise, I'm happy to rest. Judge Ross anything further. Nothing further. Thank you. All right, thank you very much. The court will take the matter under advisement.